USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/9/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD AYERS, JOSE ACOSTA,      :
FREDERICK ANTHONY BROUSSARD, and :
JEFFREY WAYNE SCHELL, individually :
and on behalf of others similarly,      :
                                        :
                          Plaintiffs,   :          03 Civ. 9078 (RMB)
                                        :
        -against-                       :
                                        :
SGS CONTROL SERVICES, INC., SGS         :
NORTH AMERICA, INC., and SGS            :
AUTOMOTIVE SERVICES, INC.,              :
                                        :
                          Defendants.   :
------------------------------------------------------------X
BRIAN FERRY, individually and on behalf of :
and others similarly situated,          :
                                        :          06 Civ. 7111 (RMB)
                          Plaintiffs,   :
                                        :
        -against-                       :          **DECISION & ORDER**
                                        :
SGS CONTROL SERVICES, INC., and SGS      :
NORTH AMERICA, INC.,                    :
                                        :
                          Defendants.   :
------------------------------------------------------------X

I.    **Introduction**

      This (consolidated) class action was initiated on November 17, 2003 by current and

former "inspector" employees ("Plaintiffs") of SGS Control Services, Inc., SGS North America,

Inc., and SGS Automotive, Inc. (collectively, "Defendants" or "SGS") for alleged violations of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.  (See Complaint, dated

November 17, 2003.)



On or about October 24, 2007, the Court commenced a bench trial. (See Trial Tr., dated Oct. 24, 2007 ("Trial Tr.").) On the first day of trial, the parties informed the Court that they reached a settlement. (Trial Tr. 57:3–24.) On or about February 15, 2008, the parties entered into an Amended Joint Stipulation of Settlement and Release ("Settlement"), including a $7,250,000.00 settlement fund ("Settlement Fund"). On or about March 10, 2008, the Court entered an Order Granting Preliminary Approval of the proposed Settlement ("Preliminary Approval Order").

On or about July 22, 2008, Plaintiffs submitted a memorandum of law in support of final approval of the Settlement. (See Mem. of Law in Supp. of Final Approval of Settlement of Class Action, dated July 22, 2008 ("Settlement Mem.").) On the same date, Plaintiffs' counsel, Getman Law Office ("Class Counsel"), moved pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and the FLSA, for approval of Class Counsel's Application for Attorneys' Fees and Costs in the amount of 28% of the Settlement or $2,102,500, plus $68,107.96 in litigation expenses.[1] (Mem. of Law in Supp. of Class Counsel's Application for Attorneys' Fees and Costs, dated July 22, 2008 ("Fees Mem.").) Defendants have not opposed Plaintiffs' memorandum of law in support of final approval of the settlement or Class Counsel's application for fees and costs.

On or about July 30, 2008, the Court held a "fairness" hearing pursuant to Fed. R. Civ. P. 23(e)(2). No person present opposed the proposed Settlement or Class Counsel's application for attorneys' fees. (See Fairness Tr.) The Court heard from Class Counsel who spoke in favor of

---

1       Class Counsel states that its requested fees are equal to 25.7% (of $8,172,607) the "overall monetary recovery for the class," which includes "the $7,250,000 Settlement, $248,287 in interest on the Settlement accrued at 5% . . . , and $674,320 paid to some class members independent of the Settlement." (Fees Mem. at 6 n.2.)

the Settlement and its application for attorneys' fees (see Fairness Tr. at 6:11–17; 7:7–9; 9:14–

10:1), and Defendants' counsel who also spoke in favor of the Settlement. (Fairness Tr. 8:15–

19.)[2] At the hearing, the parties consented to treating all claims received by the Claims

Administrator, including eight "late" claims, as timely. (Fairness Tr. 10:9–12.) The Court

confirmed that the Settlement, on consent of the parties, will "tak[e] those late filed claims into

account" and instructed the parties to resolve any remaining claims with the Class Administrator.

(Fairness Tr. 11:1–5, 16–17.)[3]

> **For the reasons set forth below, the Settlement is approved in part and the motion**
>
> **for attorneys' fees and costs is granted in part and denied in part.**

## II.     Background

The Settlement provides, among other things, the following:

- The "Class" shall be defined as "all current and former employees of SGS North America, Inc.; Oil Gas & Chemicals Services and Agricultural Services Divisions of SGS North America Inc. f/k/a SGS Control Services, Inc.; and SGS Automotive Services, Inc." for certain "Covered Periods." (Preliminary Approval Order ¶ 4.)

- "Class counsel will develop a formula for paying each Class Member based upon the number of weeks the Class Member was actively employed" by SGS "based on ADP payroll data provided by SGS." (Settlement ¶ 32(a).)

---

2       The Court was advised that the claims administrator, The Garden City Group, Inc. ("Claims Administrator"), received a single potential objection from class member Alan D. King ("Objector King"), stating, among other things, that "I would think that a 19 year employee with this type of pay method would have suffered many times more damage under [the] Class Action[] method of payment" and "I will be satisfied with whatever I get but I wish further consideration be taken as this was my career." (Decl. of Jennifer M. Keough Regarding Notice Mailing and Reporting of Timely and Untimely Claims and Exclusions Received, dated July 24, 2008 ("Keough Decl."), Ex. H.) Objector King did not appear at the fairness hearing. (See Fairness Tr.)

3       On August 14, 2008, the parties stipulated "that the Claims Administrator shall complete its resolution of all disputes [from Class Members] pursuant to ¶ 42 of the Settlement [] on or before August 25, 2008." (See Supp. to Joint Stipulation of Settlement and Release, dated August 14, 2008, attached as Ex. A ("Stipulation").)

- SGS will pay "to those Class Members submitting valid and timely claims a total of $7,250,000.00 plus accrued interest . . . less (1) a maximum of 33 1/3% of the Settlement Payment in attorney's fees and costs to Class Counsel, subject to Court approval; and less (2) a maximum of $20,000 to each of Plaintiffs Ayers, Acosta, Broussard, Schell, and Ferry who acted as Named Class Representatives, subject to Court approval; and less (3) a maximum of $1,500 per day spent in discovery related activity to each of the 21 Plaintiffs who acted as representatives for discovery purposes, subject to Court approval." (Settlement ¶ 30(a).)

- "SGS denies any liability or wrongdoing of any kind associated with the claims alleged . . . [and contends that SGS] has complied with all state and federal wage-and-hour laws, including the FLSA, and, to the extent contracts between Plaintiffs and SGS exist(ed), SGS has honored them." (Settlement ¶ 23.)

Pursuant to the Settlement and the Preliminary Approval Order, the Claims Administrator

effected notice to 2,476 potential members of the class ("Class Members") between April 9, 2008

and June 13, 2008 by mailing personalized claim forms, preliminarily approved class notice, and

a request for exclusion form ("Notice Packet"). On May 30, 2008, the parties requested the

Court's permission to send a supplemental notice to the Class Members because "the percentage

of claimants ha[d] been lower than expected" and there may have been some "confusion amongst

the class members in how much they will receive and how to claim a share of the settlement."

(Letter from Dan Getman to the Honorable Richard M. Berman, dated May 30, 2008.) Pursuant

to the Court's Order, dated June 11, 2008, the Claims Administrator sent a follow-up "mailing to

[2,042] Class Members who had already been sent [the Notice Packet] but [who] had not

responded to the original mailing." (Keough Decl. ¶ 8.) As of July 23, 2008, the Claims

Administrator "had received 1,217 timely claims and eight (8) late claims"; "twenty five (25)

timely and potentially valid exclusions"; and only "one (1) timely potential objection." (Keough

Decl. ¶¶ 10–13.)

4

## III.    Legal Standard

The Court "determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions." Gilliam v. Addicts Rehab. Ctr. Fund., No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008).  Courts must ensure: (1) that the settlement was the product of arm's length negotiations; and (2) that class counsel "'possessed the experience and ability, and . . . engaged in the discovery, necessary to effective[ly] represent [ ] . . . the class's interests.'"  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (quoting Weinberger, 698 F.2d at 74); see also Gilliam, 2008 U.S. Dist. LEXIS 23016, at *9.  The Court also determines whether the settlement is fair, adequate and reasonable by considering the (nine) factors enumerated initially in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Gilliam, 2008 U.S. Dist. LEXIS 23016, at *10 (citations omitted).

A party seeking attorneys' fees bears the "burden of 'establishing entitlement to an award . . . .'" Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1160 (2d Cir. 1994) (citation omitted).  Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an

5

appropriate hourly rate." <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 47 (2d Cir.

2000); <u>see also</u> <u>Brunson v. The City of New York</u>, No. 94 Civ. 4507, 2000 U.S. Dist. LEXIS

18434, at *4 (S.D.N.Y. Dec. 22, 2000).  Under the percentage method of awarding legal fees, the

"court sets some percentage of the recovery as a fee," but "look[s] to the same 'less objective'

factors that are used to determine the multiplier for the lodestar."  <u>Id.</u>; <u>Wal-Mart Stores, Inc. v.</u>

<u>Visa U.S.A., Inc.</u>, 396 F.3d 96, 123 (2d Cir. 2005).  "[N]o matter which method is chosen,

district courts should continue to be guided by the traditional criteria in determining a reasonable

common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and

complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation;

(5) the requested fee in relation to the settlement; and (6) public policy considerations.'"  <u>Frank</u>

<u>v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 188 (W.D.N.Y. 2005) (quoting <u>Goldberger</u>, 209 F.3d at

50).

      "The entire Fund, and not some portion thereof, is created through the efforts of counsel

at the instigation of the entire class.  An allocation of fees by percentage should therefore be

awarded on the basis of the total funds made available, whether claimed or not."  <u>Masters v.</u>

<u>Wilhelmina Model Agency, Inc.</u>, 473 F.3d 423, 437 (2d Cir. 2007).

## IV.  Analysis

### Settlement

      The Settlement is approved as fair, reasonable, and adequate to the Class for the

following reasons:

      (1)    The Settlement was the product of "an intense, adversarial arm's length

negotiation" between experienced counsel, including "informal one-on-one negotiations between



counsel" and "professional mediation through JAMS [Judicial Arbitration and Mediation Services, Inc.]."  (Settlement Mem. at 10); see also States of N.Y. and Md. v. Nintendo of America, Inc., 775 F. Supp. 676, 680–81 (S.D.N.Y. 1991).  The Settlement thus "enjoy[s] a presumption of fairness."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) (citations omitted).

(2)     The Grinnell factors favor approval of the Settlement.  The first Grinnell factor – the "complexity, expense and likely duration of the litigation" – supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete the trial, make post-trial submissions, and pursue likely appeals.  (Settlement Mem. at 3); see In re Vecco Instruments Sec. Litig., No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007) (describing risks and expense of trial and likely appeals).

The second Grinnell factor – "reaction of the class to the settlement" – favors approval of the Settlement because only one objection was filed by 2,476 potential Class Members.  (Keough Decl. ¶¶ 10–13); see D'Amato, 236 F.3d at 86–87; In re Host America Corp. Sec. Litig., No. 05 Civ. 1250, 2008 U.S. Dist. LEXIS 17405, at *8 (D. Conn. Mar. 7, 2008).  And, the 1,228 claims filed account for "90 percent of the [portion of the] settlement fund" allocated to be paid to Class Members.  (Fairness Tr. 6:24–25.)

The third Grinnell factor – "the stage of the proceedings and the amount of discovery completed" – weighs in favor of approving the Settlement because extensive discovery and motion practice conducted up to, and including one day of, trial provided the parties with "sufficient information to make an informed judgment on the reasonableness of the settlement

7

proposal." Diamond v. Fogelman, No. 90 Civ. 900, 1992 U.S. Dist. LEXIS 9734, at *9
(E.D.N.Y. June 26, 1992).

The fourth through seventh Grinnell factors – namely, the risks faced by the Class in
establishing liability and damages, maintaining the class action, and collecting on any judgment
– all support settlement.  Plaintiffs recognize that they faced litigation risks because, among
other things, SGS's liability defenses "are fact intensive determinations"; establishing damages
could be "difficult given the state of SGS's pay records"; SGS may "contest class certification if
forced to continue with the litigation"; and SGS "would be unable to withstand a judgment
based on Plaintiffs' damage calculations."  (Settlement Mem. at 6–7); see also Gilliam, 2008
U.S. Dist. LEXIS 23016, at *12–13.

The eighth and ninth Grinnell factors – "the range of reasonableness of the settlement
fund in light of the best possible recovery" and "the range of reasonableness of the settlement
fund to a possible recovery in light of all the attendant risks of litigation" – also support
settlement.  Grinnell, 495 F.2d at 455.  Plaintiffs state, among other things, that "Plaintiffs'
initial damage calculations were higher than the negotiated settlement, but the values of the
claims were substantially lowered" after certain pre-trial rulings.  (Settlement Mem. at 8.)  "The
Settlement [] in this matter represents a compromise between the strengths of Plaintiffs' case
and the possible success of [Defendants'] defenses."  Frank v. Eastman Kodak Co., 228 F.R.D.
174, 185 (W.D.N.Y. 2005). [4]

---

[4]     The sole objector (King) complains about the amount of his recovery but he "present[s]
nothing to overcome the deference that should be given to the rational allocation of benefits that
has been negotiated by counsel for the parties."  Thompson v. Metropolitan Life Ins. Co., 216
F.R.D. 55, 65 (S.D.N.Y. 2003).  And, during the Fairness Hearing, Class Counsel represented
that Objector King "will receive additional funds from the common fund."  (Fairness Tr. 3:23–
24.)

8

(3)     The Court provisionally certified the Class in the Preliminary Approval Order. (Prelim. Approval Order ¶ 3.)

"A class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rules 23(a) and 23(b)(3), i.e., numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority." In re Top Tankers, No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at *28 (S.D.N.Y. July 31, 2008) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The Class satisfies Fed. R. Civ. P. 23(a). It is "impracticable" to join the 2,476 potential Class Members. See Varljen v. H.J. Meyers & Co., No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *2 (S.D.N.Y. Nov. 8, 2000). Plaintiffs allege questions of law and fact that are "common to the class," including whether Defendants "failed to pay Plaintiffs overtime compensation . . . and otherwise violated state and federal wage-and-hour laws" (Fourth Am. Compl., dated Feb. 5, 2008, at ¶ 14), and Plaintiffs' claims stem from Defendants' pay practices and Plaintiffs rely on similar legal arguments. See Marisol A., 126 F.3d at 376 (commonality and typicality "tend to merge into one another"). And, Class Counsel appears "qualified, experienced, and generally able to conduct the litigation." Id. at 378.

The Court also finds that Fed. R. Civ. P. 23(b)(3) is satisfied because "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); see also Amchem, 521 U.S. at 623, 625.

**Class Representative Incentive Payments**

Class Counsel seeks the approval of a $20,000 payment to each of class representatives

Ayers, Acosta, Broussard, Ferry, and Schell ("Class Representatives"), as well as $1,500 per day

to 21 plaintiffs ("Discovery Plaintiffs") for each day spent in depositions, mediation, and trial

("Incentive Payments"). (Settlement Mem. at 4.)  Class Counsel argues, among other things,

that the Incentive Payments are "well within the [reasonable] range of such payments in absolute

terms"; and these Plaintiffs should be awarded Incentive Payments because they "gave their

time, their effort, bore their distress and fear without remedy; and they bore the risk of loss."

(Settlement Mem. at 13.)

The Court does not feel that payments to Class Representatives – apart from their

distributions as Class Members – are either necessary or appropriate.[5]  See e.g., Silverberg v.

People's Bank, 23 Fed. Appx. 46, 48 (2d Cir. 2001) (affirming district court's finding that

plaintiff's request for incentive payments "did not rise to the level of special circumstances

warranting an incentive award"); In re Laidlaw Sec. Litig., No. 91 Civ. 1829, 1992 U.S. Dist.

LEXIS 13935, at *9 (E.D. Pa. Sept. 15, 1992) ("The court perceives no reason for treating [the

class representative] any differently from other members of the class."); Brown v. Steinberg,

No. 84 Civ. 4654, 1990 U.S. Dist. LEXIS 13516, at *11 (S.D.N.Y. Oct. 12, 1990) ("the court

perceives no circumstances warranting a special award" to class representatives) (quoting

---

5       Moreover, the amounts sought by Class Counsel are excessive.  See In re AOL Time
Warner ERISA Litig., No. 02 Civ. 8853, 2007 U.S. Dist. LEXIS 79545, at *14 (S.D.N.Y. Nov.
28, 2007) (finding "the requested $20,000 per-plaintiff fee [to] be excessive"); Gulino v.
Symbol Technologies, Inc., No. 06 Civ. 2810, 2007 U.S. Dist. LEXIS 76915, at *7 (E.D.N.Y.
Oct. 17, 2007) (finding $30,000 incentive payment to FLSA plaintiffs to be "inconsistent with
the plaintiffs' fiduciary obligations to the absent class members.")

Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)); see also Jocelyn

D. Larkin, Incentive Awards to Class Representatives in Class Action Settlements, at 10,

available at www.impactfund.org/pdfs/Class%20Incentives% 20UPDATED.pdf, last visited

August 30, 2008 ("a number of Court of Appeal[s] cases held that by choosing to bring their

cases as a class action, the named plaintiffs 'disclaimed any right to a preferred position in the

settlement.'") (collecting cases).

    "In calculating incentive payments, courts consider 'the existence of special

circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming

and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the

prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other

burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim

and of course, the ultimate recovery.'" Frank, 228 F.R.D. at 187 (quoting Roberts v. Texaco,

Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).  "In awarding [incentive] payments as part of a

settlement, a court must ensure that the named plaintiffs, as fiduciaries to the class, have not

been tempted to receive high incentive awards in exchange for accepting suboptimal settlements

for absent class members." Sheppard v. Consol. Edison Co. of New York, No. 94 Civ. 0403,

2002 U.S. Dist. LEXIS 16314, at *17 (E.D.N.Y. Aug. 1, 2002).[6]

    Plaintiffs' application for Incentive Payments does not support a "level of special

circumstances warranting an incentive award." Silverberg v. People's Bank, 23 Fed. Appx. at

48.  There is "no indication that [the Class Representatives] assumed a risk or inconvenience not

---

[6]     Plaintiffs state that the class representatives have "spent time with counsel to prepare the
litigation, engaged in very active discovery, stayed in constant contact with the class counsel,
bore the risk of losing the litigation, bore the risks of having costs assessed against them in the
event of a loss, [and] bore the substantial risk of retaliation." (Settlement Mem. at 15.)

shared by the other class members which is of such magnitude to merit" an incentive award, In re Laidlaw Sec. Litig., 1992 U.S. Dist. LEXIS 13935, at *9, and Plaintiffs "do not provide specific evidence of [any] purported risk's magnitude," In re AOL Time Warner ERISA Litig., 2007 U.S. Dist. LEXIS 79545, at *14. "Although the Class Representatives likely received some notoriety in bringing this lawsuit, . . . [there is no evidence] of personal difficulties of consequence encountered by the Class Representatives." Rodriguez v. West Publ'g Corp., No. 05 Civ. 3222, 2007 U.S. Dist. LEXIS 74767, at *50 (C.D. Cal. Sept. 10, 2007). And, "there is no indication the Class Representatives [or Discovery Plaintiffs] were threatened with financial or personal harm in retaliation for their having brought this suit, and there was no risk of being discriminated against." Id. at *49.

The "time and effort spent by the Class Representatives does not justify the huge incentive awards requested." Id. at *51. Plaintiffs submit a one page chart reflecting the number of days (ranging from one to seven) each Discovery Plaintiff participated in a deposition, mediation, or trial (see Settlement Mem. Ex. 4), and provides no evidence of the amount of time spent by the Class Representatives "review[ing] documents," and "respond[ing] to interrogatories."[7] (Settlement Mem. at 15, Ex. 4). Beyond consulting with counsel, aiding in discovery, and participating in other "normal obligations of class representation, however, [the Class Representatives and Discovery Plaintiffs] did not perform any extraordinary services to the class" worthy of an incentive award. Weseley, 711 F. Supp. at 720. Nor have Plaintiffs claimed that there is "the need to reimburse [the Class Representatives or Discovery Plaintiffs]

---

[7]      Plaintiffs also seek to pay three Discovery Plaintiffs $4,500 each for three days of participating in the trial, although, as noted, the trial lasted only one half-day. (Settlement Mem. at Ex. 4.)

for specific expenses they have incurred, including out-of-pocket costs of asserting the

litigation, [or] the use of leave time in order to attend depositions and other such costs."

Sheppard, 2002 U.S. Dist. LEXIS 16314, at *19 n.9; (see also Declaration of Dan Getman,

dated July 22, 2008 ("Getman Decl."),¶ 10 ("This case was handled without prepayment of costs

and fees by the plaintiffs.").)

Class Representative Richard Ayers speculates (in conclusory terms) that he has had

trouble finding work as an inspector because his "name is known throughout the [inspection]

industry," and that by lending himself to the prosecution of the case "he was turned down from

[a] job because the work was to oversee a SGS contract, and someone from SGS did not want

[him] on the job." (See Declaration of Richard Ayers in Supp. of Named Plaintiffs Class

Payment, dated July 21, 2008 ("Ayers Decl.") ¶ 5–6.) As a Class Representative, Mr. Ayers is

"expected to endure such inconvenience without special compensation." Sheppard, 2000 U.S.

Dist. LEXIS 20629, at *15 (rejecting incentive payment when alleged retaliation formed basis

for request). And, Mr. Ayers also states that he "brought this action shortly after leaving

employment with SGS because of the long hours, low pay and lack of overtime pay." (Ayers

Decl. ¶ 2.) Based upon his recovery of approximately $7,626.47, and "in light of his reasons for

commencing suit, he will no doubt be well satisfied with the settlement and content to share in it

equally with the Class." Weseley, 711 F. Supp. at 721.

**Attorneys' Fees and Costs**

Plaintiffs argue, among other things, that they should receive $2,102,500 or 28% of the

Settlement Fund (plus accrued interest) plus $68,107.96 in costs and expenses, because Class

Counsel's "3,407.8 attorney hours and 3,196.4 paralegal hours . . . [were] necessary due to the

size and complexity of the case"; Class Counsel "accepted this case on a contingency basis"; "Class counsel brought substantial litigation experience to bear in this case"; "the percentage sought for fees is lower than is often awarded in similar common fund cases"; and "reimbursing counsel for representing a class that could otherwise not afford representation is in line with" public policy. (Fees Mem. at 8–11.)

Employing the percentage method of fixing Class Counsel's compensation (while relying upon the lodestar method as a "cross-check"), the Court finds, for the reasons that follow, that 19% of the $7,250,000.00 Settlement Fund or $1,377,500.00 is a fair and reasonable fee under Goldberger and related cases.[8]

The first Goldberger factor relates to "the time and labor expended by counsel." Because the Court is awarding fees on a percentage basis, the Court need not "exhaustively scrutinize" counsel's hourly submissions, Goldberger, 209 F.3d at 49–50, but "[e]ven in a cursory review of the time spent for specific tasks, this Court finds what appears to be [some] excessive hours spent and inappropriate staffing," In re KeySpan Corp. Sec. Litig., No. 01 Civ. 5852, 2005 U.S. Dist. LEXIS 29068, at *16 (E.D.N.Y. Aug. 25, 2005). The three senior attorneys on the case, whose hourly rates range from $375 to $600, billed a total of 3,238.8 hours or 49% of the total. (Settlement Mem. at 13.) The two more junior attorneys, whose hourly rate is $250, billed a total of 169 hours, or 2.5% of the total. (Id.) The remaining 3,196.4 hours were charged by seven paralegals at $125 an hour. (Id.; Getman Decl. Ex. 4.) "It appears that some of the work done by [] senior attorney[s] could have been performed by a junior attorney" at a lower billing rate. Rossa v. PI Mgmt. Assoc., No. 02 Civ. 1702, 2006 U.S. Dist.

---

8    It is the Court's understanding that any unclaimed funds will be distributed to the Class Members who have filed timely claims.

14

LEXIS 27127, at *11–12 (S.D.N.Y. May 5, 2006).  For example, Mr. Getman (a partner

charging $500 an hour) bills for certain tasks that could have been performed by a more junior

attorney, paralegal, or secretary including, among other things, "legal research on retaliation

standards"; "review all files to determine defendant's outstanding obligations"; "get train

schedule"; "found round trip travel to 30(b)(6) deposition"; "review and print depo[sition]

notices from [Defendants]"; "help get out mailing of class notice"; and (even) "apply stamps to

envelopes." (See Getman Decl. Ex. E.)  Many of the paralegal time entries are too imprecise

and vague for meaningful review, including, among other things, billings for "legal research";

"file review"; and "document inspection and review." (Getman Decl. Ex. F.)  See Schruefer v.

Winthorpe Grant, Inc., No. 99 Civ. 9365, 2003 U.S. Dist. LEXIS 11179, at *11 (S.D.N.Y. July

2, 2003) (reducing lodestar for imprecise and vague time entries such as "various phone

conferences"; "review file"; "legal research"; and "case administration").

　　　　As to the second and third Goldberger factors – "the magnitude and complexities of the

litigation" and "the risk of [contingency] litigation" – the issues faced by Plaintiffs were not

significantly different or greater than those faced by plaintiffs in other similar class action

litigations.  See Sines v. Service Corp. Int'l, No. 03 Civ. 5465, 2006 U.S. Dist. LEXIS 25072, at

*9–10 (S.D.N.Y. May 1, 2006) ("The claims, here, involved no issues of exceptional

difficulty. . . . It is, at bottom, a suit for unpaid overtime."); Frank, 228 F.R.D. at 185 (approving

settlement of FLSA case when "case [was] less complex than many, [and] the costs of continued

litigation [would] be substantial").

　　　　The fourth Goldberger factor – "the quality of representation" – was acceptable and

expected.  "Courts should not necessarily award an increased fee where counsel simply displays

15

the general level of skill expected." <u>Ling v. Cantley & Sedacca, LLP</u>, No. 04 Civ. 4566, 2006 U.S. Dist. LEXIS 4711, at *8 (S.D.N.Y. Feb. 8, 2006).

As to the fifth <u>Goldberger</u> factor – "the requested fee in relation to the settlement" – a fee of 19%, or $1,377,500.00, of the $7,250,000.00 Settlement is reasonable and consistent with fees granted in other class actions. <u>See, e.g.</u>, <u>In re EVCI Career Colleges Holding Corp. Sec. Litig.</u>, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *52 (S.D.N.Y. July 27, 2007) (awarding 18% of $7,725,000 settlement fund); <u>In re Bristol Myers Squibb Sec. Litig.</u>, No. 06-2925, 2007 U.S. App. LEXIS 18093, at *7 (3d Cir. 2007) (affirming award of 19.77% of $36 million settlement fund); <u>Sines</u>, 2006 U.S. Dist. LEXIS 25072, at *10 (awarding 20% of $4,450,000 settlement fund); <u>Varljen v. Meyers & Co.</u>, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 8, 2000) (awarding 20% of $5,040,750 settlement fund); <u>In re Health Mgmt. Sys., Inc.</u>, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (awarding 20% of $4,500,000 settlement fund).

As to the sixth <u>Goldberger</u> factor – "public policy considerations" – a fee award of 19% balances the "overarching concern for moderation" with the public policy enforcing the FLSA. <u>See</u> <u>Goldberger</u>, 209 F.3d at 53.

The reasonableness of a $1,377,500.00 legal fee award is confirmed by a lodestar "cross-check." <u>Goldberger</u>, 209 F.3d at 50. The hourly rates charged by Class Counsel – <u>e.g.</u>, $500 for Dan Getman and $600 for Ed Tuddenham – are generous, bearing in mind that Mr. Getman and Mr. Tuddenham billed 1,584.73 hours and "[t]he disproportionately high percentage of work performed by . . . [these attorneys] resulted in a disproportionately higher lodestar."[9] <u>KeySpan</u>, 2005 WL 3093399, at *16. Approximately $819,165 of Class Counsel's proposed

$1,881,241 lodestar is attributed to Mr. Getman and Mr. Tuddenham, while only approximately $42,250 of the lodestar is attributable to the two junior attorneys on the matter. (Fees Mem. at 13.) Class Counsel "fail[ed] to delegate work to junior, less expensive attorneys [and this is] grounds for reducing [the] award of attorney's fees." Rossa, 2006 U.S. Dist. LEXIS 27127, at *11-12. The Court also finds the total amount of hours expended by Class Counsel and paralegals to be excessive based on its "first-hand knowledge of [the] litigation and its extensive contact with the parties." Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997). "A negative multiplier of plaintiff counsel's lodestar is not out of the ordinary in common fund cases, particularly where awarding a positive multiplier of the lodestar may 'swallow up' a significant portion of the settlement funds." Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2007 U.S. Dist. LEXIS 48151, at *18 (S.D.N.Y. July 5, 2007) (collecting cases).

Class Counsel's request for reimbursement of expenses in the amount of $68,107.96 appears reasonable. See In re Ashanti Goldfields, No. 00 Civ. 717, 2005 U.S. Dist. LEXIS 28431, at *5 (E.D.N.Y. Nov. 15, 2005) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."). Plaintiffs submitted a list of all costs "necessary to litigating this action" and provided invoices and documentation. (Fees Mem. at 18.) The requested fees include, among other things, court fees ($584.25), photocopying and reproduction ($23,319.67), deposition transcription ($23,895.67), postage, Federal Express, next-day delivery, and messenger services ($6,141.50), and transportation and lodging ($14,166.87). (See Getman Decl. at Ex. 9.) "A review of the itemized cost and expense reports provided by Plaintiffs' counsel [] indicates that these costs are well-documented and were reasonably incurred." Spann

---

[9] And, apparently included placing stamps on envelopes. (Getman Decl. Ex. F.)

17

v. AOL Time Warner, Inc., No. 02 Civ. 8283, 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005). The expenses incurred "are the type for which 'the paying, arms' length market' reimburses attorneys." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004); see also In re Top Tankers, 2008 U.S. Dist. LEXIS 58106, at *59 (approving expenses in full for "photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of [the class action]"). "For this reason, they are properly chargeable to the Settlement fund." In re Global Crossing, 225 F.R.D. at 468.

## V.    Conclusion and Order

For the foregoing reasons, the Court approves the Settlement in part and Plaintiffs' application for attorneys' fees and costs [#241] is granted in part and denied in part. The Court awards 19% or $1,377,500.00 in attorneys' fees and $68,107.96 in expenses. The Clerk is respectfully requested to close this case.

Dated: New York, New York
      September 8, 2008

_____
RICHARD M. BERMAN, U.S.D.J.

18

# EXHIBIT A



COURTESY COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
AUG 14 2008
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J.

```
-----------------------------------------------------------X
RICHARD AYERS, JOSE ACOSTA,                       :
FREDERICK ANTHONY BROUSSARD, and                  :
JEFFREY WAYNE SCHELL, individually and            :
on behalf of others similarly situated,           :
                                                  :   Case No. 03 Civ. 9078(RMB)(RLE)
                        Plaintiffs,               :
                                                  :
           v.                                     :
                                                  :
SGS CONTROL SERVICES, INC., SGS                   :
NORTH AMERICA, INC., and SGS                      :
AUTOMOTIVE SERVICES, INC.   ,                     :
                                                  :
                        Defendants.               :
-----------------------------------------------------------X
BRIAN FERRY, individually and                     :
on behalf of others similarly situated,           :
                                                  :
                        Plaintiffs,               :
                                                  :   Case No. 06 Civ. 7111(RMB)(RLE)
           v.                                     :
                                                  :
SGS CONTROL SERVICES, INC. and                    :
SGS NORTH AMERICA, INC.,                          :
                                                  :
                        Defendants.               :
-----------------------------------------------------------X
```

## SUPPLEMENT TO JOINT STIPULATION OF SETTLEMENT AND RELEASE

DAVID W. LONG-DANIELS (DL-4593)
GREENBERG TRAURIG, LLP
Metlife Building
200 Park Avenue
New York, New York  10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Defendants*
SGS North America, Inc., SGS Control Services, Inc. and SGS Automotive Services, Inc.

*ATL 16,911,898v1 8-14-08*



MICHAEL J. D. SWEENEY
DAN GETMAN
GETMAN LAW OFFICE
9 Paradies Lane
New Paltz, New York 12561
Telephone: (845) 255-9370
Facsimile: (845) 255-8649

*Attorneys for Plaintiffs*

Plaintiffs Richard Ayers, Jose Acosta, Frederick Anthony Broussard, Jeffrey Wayne Schell and Brian Ferry, individually and on behalf of all others similarly situated, and Defendants SGS North America, Inc., SGS Control Services, Inc. and SGS Automotive Services, Inc., by and through their respective counsel of record, agree to resolve the outstanding issues detailed below through this Supplement to their Joint Stipulation of Settlement and Release.

1) Plaintiffs request that the Court: (a) approve the claims filed by all class members on or before July 30, 2008 and (b) directs the Claims Administrator to treat such claims as timely filed. Defendants do not object to this request.

2) The parties hereby stipulate that the Claims Administrator shall complete its resolution of all disputes pursuant to ¶ 42 of the Settlement Agreement on or before August 25, 2008.

3) A revised **FINAL ORDER APPROVING SETTLEMENT, SERVICE PAYMENTS, COSTS AND ATTORNEYS FEES** reflecting these stipulations is attached hereto for the Court's consideration and review.

ATL 16,911,898v1 8-14-08

Respectfully submitted,

DATED:  August 14, 2008          GREENBERG TRAURIG, LLP

                                 By:_____
                                         DAVID W. LONG-DANIELS

                                 Attorneys for Defendants
                                 SGS North America, Inc., SGS Control Services, Inc. and
                                 SGS Automotive Services, Inc.

DATED:  August 14, 2008          GETMAN LAW FIRM

                                 By:_____
                                         MICHAEL J. D. SWEENEY

                                 Attorneys for Plaintiffs

ATL 16,911,898v1 8-14-08